OPINION JUDGMENT ENTRY
{¶ 1} Plaintiff-appellant Adrian Alecia appeals from the July 24, 2003, Judgment Entry of the Tuscarawas County Court of Common Pleas dismissing plaintiff's case after a trial to the bench.
STATEMENT OF THE FACTS AND CASE
 {¶ 2} On March 11, 1946, Raymond L. Lawrence and Mary E. Lawrence acquired the acreage now owned by appellant Adrian Alecia via deed from Marie Richards. On February 19, 1963, appellees, Rollin and Juanita Welch, acquired their acreage pursuant to a deed from Harvey Harding. The property owned by Adrian Alecia adjoins the property owned by Rollin and Juanita Welch. A gas well exists on the Welch property.
 {¶ 3} On September 3, 1982, appellees executed an oil and gas lease in favor of Pomstone Corp. In turn, on August 24, 1984, Raymond L. and Mary E. Lawrence, as lessors, and Stone Resource and Energy Corporation, as lessee, executed an oil and gas lease. The Lawrence oil and gas lease stated, in relevant part, as follows:
 {¶ 4} "6. Lessor may lay a line to any well on saidpremises and take gas produced from said well for use for light and heat in one dwelling house on said premises at Lessor's own risk, subject to the use and right of abandonment of the well by Lessee. The first two hundred thousand (200,000) cubic feet of gas taken each year shall be free of cost, but all gas in excess of two hundred thousand (200,000) cubic feet taken each year shall be paid for at the current published rates at the town nearest the premises above described and the measurements and regulations shall be by meter and regulators set at the tap on the line. This privilege is upon the condition that Lessor shall subscribe to and be bound by the reasonable rules and regulations of Lessee relating to the use of free gas.
 {¶ 5} "7. Lessor hereby grants to Lessee the right to consolidate the leased premises or any part or parts thereof with other lands to form an oil development unit of not more than one hundred and sixty acres or gas development unit of not more than 300 hundred and forty acres for the purpose of drilling a well thereon, but Lessee shall in no event be required to drill more than one well on such unit. Any well drilled on said development unit, whether or not located on the leased premises, shall nevertheless be deemed to be located on the leased premises within the meaning and for the purposes of all the provisions and covenants of this lease, to the same effect as if all the lands comprising said unit were described in and subject to this lease. . . . Lessor further agrees that only the owner of thelands on which the development unit well is located may take gasfor use in one dwelling house as hereinbefore provided."
(Emphasis added.)
 {¶ 6} As memorialized in an amendment to the lease, also dated August 24, 1984, Stone Energy and Resource Corporation, as lessee, agreed to "promptly connect a line at the well to supply gas to Lessor's [the Lawrence's] dwelling at Lessee's cost to the Lessor." The amendment further provided that the Lawrences would make their own connection at the dwelling. It should be noted here that a gas well was never placed on the Lawrence property.
 {¶ 7} Pursuant to a Notice of Consolidation of Oil and Gas Leases dated June 12, 1985, the Lawrence and Welch oil and gas leases, among others, were consolidated "to form an oil and gas development unit of 318.0 acres, more or less, for a well located on the lands of the first lease hereinafter described . . .," which is the Welch lease. The Notice of Consolidation stated, in pertinent part, as follows:
 {¶ 8} "Under the terms and conditions of each of the above leases as herein consolidated, the lands covered hereby shall be considered as a single tract of land for the purpose of drilling, and a well commenced upon the lands herein consolidated shall have the same effect as though such well were commenced upon the premises described in each such oil and gas lease, provided thatonly the owners of the lands on which said well is located shallhave the privilege of taking gas for use in one dwelling house onsaid lands in accordance with and subject to the provisions ofthe lease covering said land
 {¶ 9} "The consolidation of Oil and Gas Leases shall not be construed as creating any rights in the landowner which are not contained in the Oil and Gas Leases, or as entitling the landowner to receive any royalties which the landowner is not entitled to receive under the Oil and Gas Leases." (Emphasis added).
 {¶ 10} After the leases were consolidated, Raymond Lawrence, appellant's predecessor in title, asked appellees if he could connect into appellees' gas line leading to the well on appellee's property. Appellees orally agreed on the condition that Lawrence would pay for gas usage exceeding the 300,000 cubic feet per year that had been granted to appellees in their oil and gas lease[1] and provided that the lessee (at that time Atwood Resources, Inc.) did not object. Since the lessee did not object, this oral arrangement between Lawrence and appellees continued until Lawrence's death.
 {¶ 11} On July 7, 1999, appellant became the deed owner of the former Lawrence property after acquiring title to the same from the Estate of Raymond L. Lawrence. After he became the deed owner, appellant asked appellee Rollin Welch about his arrangement with Raymond Lawrence concerning gas usage. Appellee told appellant that "as long as it's okay with the gas company, it would be okay with me to use the gas, but he has to pay over 300,000, whatever goes over 300,000 he has to pay it." Transcript at 158. By such time, the consolidation of oil and gas leases had been transferred to Resource Energy, Inc. (REI) as named lessee. Appellant agreed to such arrangement with Rollin Welch.
 {¶ 12} Appellant used the gas for approximately two and a half years. However, after receiving a bill from REI for $162.20, which represented his gas usage over the 300,000 cubic feet per year maximum allotted to appellees, appellant refused to pay the same and REI threatened to cut off appellees' gas supply. As a result, appellees severed the gas line leading from appellant's property to the well on appellees' property.
 {¶ 13} Subsequently, appellant filed a complaint for quiet title, conversion of leasehold rights, trespass, damages, injunctive relief and punitive damages against appellees in the Tuscarawas County Court of Common Pleas. Appellant, in his complaint, specifically alleged that appellees trespassed on appellant's land and severed the gas line and that appellees converted appellant's gas supply. In addition to an injunction preventing "continued action," appellant sought an order quieting title to appellant's lease rights and an order "enjoining [appellees] to honor, respect and comply with [appellant's] title and ownership of his deeds, leases, rights and peaceable and quiet enjoyment of his lands." Appellees filed an answer to the same on April 26, 2002.
 {¶ 14} Thereafter, a bench trial was held on April 10, 2003. At the direction of the trial court, the parties filed post-trial memoranda/final legal arguments and proposed findings of fact and conclusions of law. Pursuant to a Judgment Entry filed on July 24, 2003, the trial court dismissed appellant's complaint with prejudice. The trial court, in its entry, made the following conclusions of law:
 {¶ 15} "1. Plaintiff has failed to join a necessary party to this litigation, namely REI, the Lessee in the consolidation lease and the Court has no authority to issue Orders affecting the legal rights of REI in this case vis-à-vis their contracts with Plaintiff and Defendants.
 {¶ 16} "2. Plaintiff has failed, by a preponderance of the evidence, to establish that Defendants have breached any contractual obligation with Plaintiff relative to the supplying of gas to the Plaintiff's residence from the well located on Defendants' property.
 {¶ 17} "3. Plaintiff has failed, by a preponderance of the evidence, to establish that he is entitled to injunctive relief in this case.
 {¶ 18} "4. The relief sought by Plaintiff vis-à-vis the supplying of gas to his property from the well located on Defendant's property cannot be granted absent the presence of REI as a party to this lawsuit because the only contractual relationship regarding the supplying of gas to Plaintiff's property is between Plaintiff (successor in interest to Laurence) [sic] and REI (successor in interest to previous Lessees)."
 {¶ 19} It is from the trial court's July 24, 2003, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 20} "I. The trial court committed plain error in allowing oral testimony to vary or modify terms of a certified and publicly recorded oil and gas lease to favor appellees.
 {¶ 21} "2. The trial court abused its discretion and committed error prejudicial to this appellant when it made finidngs of fact which alluded to evidence which was not produced in the trial record.
 {¶ 22} "3. The trial court's judgment was against the manifest weight of the admissible evidence, and prejudiced the rights of the appellant."
 I {¶ 23} Appellant, in his first assignment of error, argues that the trial court committed plain error in allowing oral testimony to vary or modify the terms of the Lawrence lease. We disagree.
 {¶ 24} Appellant, in support of his argument, contends that the Lawrence lease granted valuable gas rights (i.e. — free gas) which ran with the land and that as successor in title, he is entitled to such gas. Appellant specifically points to the following language in the Lawrence lease:
 {¶ 25} "6. Lessor may lay a line to any well on said premises and take gas produced from said well for use for light and heat in one dwelling house on said premises at Lessor's own risk, subject to the use and right of abandonment of the well by Lessee. The first two hundred thousand (200,000) cubic feet of gas taken each year shall be free of cost, but all gas in excess of two hundred thousand (200,000) cubic feet taken each year shall be paid for at the current published rates at the town nearest the premises above described and the measurements and regulations shall be by meter and regulators set at the tap on the line. This privilege is upon the condition that Lessor shall subscribe to and be bound by the reasonable rules and regulations of Lessee relating to the use of free gas.
 {¶ 26} "7. Lessor hereby grants to Lessee the right to consolidate the leased premises or any part or parts thereof with other lands to form an oil development unit of not more than one hundred and sixty acres or gas development unit of not more than 300 hundred and forty acres for the purpose of drilling a well thereon, but Lessee shall in no event be required to drill more than one well on such unit. Any well drilled on said development unit, whether or not located on the leased premises, shall nevertheless be deemed to be located on the leased premises within the meaning and for the purposes of all the provisions and covenants of this lease, to the same effect as if all the lands comprising said unit were described in and subject to this lease. . . . Lessor further agrees that only the owner of the lands on which the development unit well is located may take gas for use in one dwelling house as hereinbefore provided."
 {¶ 27} Appellant also points to the amendment to the lease, also dated August 24, 1984, which provides that Stone Energy and Resource Corporation, as lessee, agrees to "promptly connect a line at the well to supply gas to Lessor's [the Lawrence's] dwelling at Lessee's cost to the Lessor." The amendment further provided that the Lawrences would make their own connection at the dwelling.
 {¶ 28} Appellant maintains that the trial court ignored the above language of the lease and, instead, relied on oral testimony to modify the terms of the same.
 {¶ 29} As is stated above, appellant argues that, pursuant to the above provisions, he was entitled to free gas under the terms of the Lawrence lease. However, while paragraph 6, cited above, entitled the Lawrences to "lay a line to any well on saidpremises and take gas produced from said well", no well was ever drilled on the Lawrence property, which is currently owned by appellant. (Emphasis added). Paragraph 6, therefore, has no applicability since there was no well on "said premises" and is irrelevant to the case sub judice. Thus, appellant is not entitled to free gas under such paragraph.
 {¶ 30} In turn, paragraph 7 of the Lawrence's lease, which deals with consolidation, provides that "only the owner of lands on which the development unit well is located may take gas for use in one dwelling house as herein before provided."
 {¶ 31} The consolidation notice filed on June 12, 1985, states, in pertinent part, as follows: ". . . and a well commenced upon the lands herein consolidated shall have the same effect as though such well were commenced upon the premises described in each such oil and gas lease, provided that only the owners of the lands on which said well is located shall have the privilege of taking as for use in one dwelling house on said lands in accordance with and subject to the provisions of the lease covering said land"
 {¶ 32} As appellees note in their brief, the evidence in this case is clear that the well is located in a consolidation development that includes both appellees' and appellant's land and that the well is physically located on appellees' lands. Therefore, only appellees would be entitled to free gas under the above provisions. Thus, contrary to appellant's argument, the trial court did not modify the terms of the Lawrence lease.
 {¶ 33} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 34} Appellant, in his second assignment of error, argues that the trial court erred when it made findings of fact which alluded to evidence that was not produced at trial. Appellant notes that while the trial court, in its July 24, 2003, Judgment Entry, found that appellees had acquired title to their real property in February of 1963 from Harvey Harding, the deed transferring the property from Harding to appellees was not produced at trial.
 {¶ 35} However, at trial, appellee Rollins Welch testified, without objection, that he has lived at his address since 1963 and that he acquired one of the two tracts comprising his property in 1963. In short, there was uncontroverted evidence in the record that appellees are the owners of the subject property on which the well is located. Furthermore, we concur with appellees that appellees' ownership of the real estate, including the date of acquisition, is not relevant to appellant's claims for trespass, improper taking, injunctive relief and quiet title.
 {¶ 36} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 37} Appellant, in his third assignment of error, contends that the trial court's judgment was against the manifest weight of the evidence. We disagree.
 {¶ 38} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 39} Appellant, in his complaint, alleged that appellees committed a trespass upon the right to appellant's gas line and converted appellant's free gas supply. Appellant further requested injunctive relief based upon the alleged trespass and conversion and sought an order to "quiet title".
 {¶ 40} "A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue, even though such damages may be insignificant." Linley v. DeMoss (1992),83 Ohio App.3d 594,598, 615 N.E.2d 631. "Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." State ex. rel Toma v. Corrigan
(2001), 92 Ohio St.3d 589, 592, 2001-Ohio-1289, 752 N.E.2d 281, quoting Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93,96, 551 N.E.2d 172.
 {¶ 41} There is no dispute that appellee Rollin Welch severed appellant's gas line after appellant refused to pay REI's $162.20 bill and REI threatened to terminate the gas supply to appellees' residence. However, we concur with appellees that the crucial issue in this case is whether appellant had a right to free gas. As is stated above in our discussion of appellant's first assignment of error, the Lawrence lease does not grant appellant a right to free gas. While paragraph 6 of the Lawrence lease provides that "Lessor may lay a line to any well on saidpremises and take gas. . . .", no well was ever drilled on appellant's property.
 {¶ 42} Furthermore, paragraph 7 of the Lawrence lease, which concerns consolidation of oil and gas leases, further states that the "lessor further agrees that only the owner of the lands on which the development unit well is located may take gas for use in one dwelling house . . ." Similar language is contained in the June 12, 1985, consolidation notice which stated in relevant part, as follows:
 {¶ 43} "Under the terms and conditions of each of the above leases as herein consolidated, the lands covered hereby shall be considered as a single tract of land for the purpose of drilling, and a well commenced upon the lands herein consolidated shall have the same effect as though such well were commenced upon the premises described in each such oil and gas lease, provided thatonly the owners of the lands on which said well is located shallhave the privilege of taking gas for use in one dwelling house onsaid lands in accordance with and subject to the provisions ofthe lease covering said land
 {¶ 44} "The consolidation of Oil and Gas Leases shall not be construed as creating any rights in the landowner which are not contained in the Oil and Gas Leases, or as entitling the landowner to receive any royalties which the landowner is not entitled to receive under the Oil and Gas Leases." (Emphasis added).
 {¶ 45} Since the development well was located on the land owned by appellees, only appellees were entitled to free gas. In short, there is no document granting appellant a right to free gas from any well on the consolidation unit. Thus, appellees acted within their rights by severing the gas line to appellant's property when threatened by REI with the cessation of gas to their residence.
 {¶ 46} We further find that there is no evidence in the record establishing that the conduct of the parties created a right to free gas. We note that there was testimony adduced at trial that appellee Rollin Welch agreed, after appellant had purchased the Lawrence property, that "as long as it's okay with the gas company [REI], it would be okay with me to use the gas, but he has to pay over 300,000, whatever goes over 300,000 he has to pay it. However, we concur with the trial court that appellees had no legal authority to grant free gas to appellant "absent the presence of REI as a party to this law suit because the only contractual relationship regarding the supplying of gas to plaintiffs [appellant's] property" is between appellant and REI. However, REI, which had the discretion to permit appellees to grant their free gas to appellant, is not a party to this action.
 {¶ 47} Appellant's third assignment of error is, therefore, overruled.
 {¶ 48} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.
Judgment affirmed.
Edwards, J. and Gwin, P.J. concur.
Hoffman, J. concurs separately.
[1] While the standard oil and gas lease provides 200,000 cubic feet per year to one dwelling, appellee Rollin Welch testified that he "told the guy that I leased to I wanted 300,000 or I wouldn't lease to him . . . so they gave me 300,000." Transcript at 150.