OPINION
{¶ 1} Plaintiffs-appellants, Samuel and Sheri Pritchard, appeal from a Harrison County Common Pleas Court decision granting summary judgment in favor of defendants-appellees, Steven and Janet Jacobs and the estate of Floyd Kimble.
 {¶ 2} This case involves a dispute over whether the Jacobses are entitled to free gas from a well located on the Pritchards' property. The undisputed facts are as follows.
 {¶ 3} Harry and Barbara Welsh owned approximately 160 acres of land in Harrison County (the Welsh property). On December 29, 1982, the Welshes executed an oil and gas lease (the lease) with appellee, Floyd Kimble.[1] Pursuant to the lease, Kimble drilled a well on the Welsh property. Also pursuant to the lease, free gas was piped to the Welsh residence from the well after the Welshes laid the pipeline.
 {¶ 4} Barbara passed away in 1998 leaving Harry as the sole owner of the Welsh property. Additionally, Barbara's leasehold interest was transferred to Harry.
 {¶ 5} In 1999, Harry sold approximately 151 acres of the Welsh property to the Pritchards, including the portion where the well is located. Harry retained approximately ten acres, including the portion where the residence is located. Harry also retained the right to free gas to his residence.
 {¶ 6} Harry died in 2001. Harry's estate sold the remainder of the Welsh property to the Jacobses in 2002.
 {¶ 7} The Jacobses now reside in the former Welsh residence and own the approximately ten acres that Harry had retained out of the original 160 acres subject to the lease. The Jacobses have continued to use the free gas, although the well that provides the gas is located on the Pritchards' land.
 {¶ 8} The Pritchards filed a complaint against the Jacobses, Kimble, and defendants-appellees, Deborah Zimmerman and David Welsh, the heirs of Harry Welsh, for a declaratory judgment asking the court to construe the parties' rights *Page 2 
under the lease. The Pritchards requested that the court (1) declare that the Jacobses are not entitled to any free oil or gas under the lease and (2) order Kimble to execute an oil and gas lease with them as subsequent owners of the land upon which the well is located in substantially the same form as the original lease. The Pritchards also sought damages from the Jacobses for unjust enrichment and conversion.
 {¶ 9} The Pritchards later filed a motion for partial summary judgment on their declaratory judgment claim construing the lease. The Jacobses then filed a motion for summary judgment in response.
 {¶ 10} The trial court granted summary judgment to the Jacobses and held that they are entitled to retain the use of the free gas as owners of the residence that was provided free gas under the lease. The court found that the right to use the gas continues as a covenant running with the land, which was not severed from the property when Harry transferred the property to the Pritchards or when Zimmerman transferred the property to the Jacobses.
 {¶ 11} The Pritchards filed a timely notice of appeal on November 17, 2006.
 {¶ 12} The Pritchards raise two assignments of error that share a common basis in law and fact. Therefore, we will address them together. They state:
 {¶ 13} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFFS SAMUEL AND SHERI PRITCHARD."
 {¶ 14} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STEVEN AND JANET JACOBS."
 {¶ 15} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. American Indus. Resources Corp. (1998), 128 Ohio App.3d 546, 552, 715 N .E .2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. *Page 3 
Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Flemming (1994),68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc,Inc. (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248,106 S.Ct. 2505, 91 L.Ed.2d 202.
 {¶ 16} The Pritchards argue that the plain language of the lease reveals that the original parties intended that in the event of the severance of the land so that the well was located on a separate parcel of land from the residence, only the well parcel would be entitled to free gas.
 {¶ 17} Paragraph seven of the lease provides:
 {¶ 18} "The Lessor [Harry and Barbara Welsh] may, at Lessor's sole risk and cost, lay a pipeline to any one gas well on the premises, and take gas produced from said well for domestic use in one dwelling house on the leased premises, at Lessor's own risk, subject to the use and the right of abandonment of the well by the Lessee. The first two hundred thousand cubic feet of gas taken each year shall be free of cost[.] * * * Lessor acknowledges that he has been advised as to the risks inherent in the taking of gas in manner, and Lessor agrees to assume all such risks whether same be caused by Lessor's lines or equipment, or whether same be caused by Lessee's equipment or well operation; and Lessor agrees to hold Lessee and the well operator and all parties in interest in any well on the leasehold premises harmless from any claims of any nature whatsoever which may arise by the usage of gas from any such well by Lessor, his heirs, executors, administrators and assigns. Lessor further agrees that upon the sale or transfer of the leasehold premiseswherein someone other then the Lessor is entitled to take the gas underthis Paragraph 7, that the gas supply will be terminated by Lessee untilthe Buyer of the property executes an agreement regarding the usage ofthe gas in the same form as *Page 4 the within agreement. In the absence of such an agreement, free gas under this provision, shall terminate the within right to free gas not being assignable without consent of the Lessee." (Emphasis added.)
 {¶ 19} The Pritchards argue that pursuant to these terms, the right to free gas terminated when the Welshes conveyed the property to other parties and that a new lease must be executed with Kimble, the lessee. Thus, the Pritchards argue that when the Jacobses took title to the 10-acre tract and the house in 2001, the right to free gas terminated because it was no longer being used by the original lessor entitled to free gas.
 {¶ 20} In response, the Jacobses argue that a residential gas right runs with the premises served by that right, without regard to the location of the gas well. Citing, Sethi v. Antonucci (1998),126 Ohio App.3d 382, 710 N.E.2d 719. They point out that in Stapleton, infra, andSethi, supra, the Fourth District and then this court held that the location of the well is irrelevant in determining which party is to receive free gas. The Jacobses contend that the free gas is a covenant that runs with the land containing the dwelling house that originally received the free gas.
 {¶ 21} The Jacobses further contend that when they purchased their tract of land containing the dwelling house, they became the lessor of the lease as to their ten-acre piece of property. This piece of property, they contend, included the residential "free gas" right. And they argue that the lease only required a newly executed agreement if the lessor sold the premises and someone other than the new lessor was entitled to the free gas.
 {¶ 22} Kimble has also filed a brief in this matter. She too asserts that the Jacobses are the party entitled to the free gas.
 {¶ 23} All parties rely on the Fourth District case of Stapleton v.Columbia Gas Transmission Corp. (1981), 2 Ohio App.3d 15,440 N.E.2d 575, as the leading Ohio case regarding the interpretation of an oil and gas lease containing a "free gas" provision.
 {¶ 24} In Stapleton, the Gillettes entered into a lease with Columbia Gas's *Page 5 
predecessor giving them the rights to gas and oil on their 98-acre tract of land. The lease provided for free gas "for light and heat in the mansion house on said premises." The terms of the lease extended "to the heirs, executors, successors and assigns of the parties hereto." Years later, the Gillettes conveyed the land to Emogene and Hayden Stapleton.
 {¶ 25} The Stapletons began using the free gas at their dwelling on the land. The Stapletons reconveyed 40 acres of the original tract to the Gillettes, but retained oil, gas, and mineral rights. The Stapletons then conveyed a 1.21 acre tract to John and Mattie Stapleton. John Stapleton extended a gas line from Emogene and Hayden Stapleton's residence and also began using free gas to his newly built home on the 1.21 acre tract. Emogene and Hayden Stapleton next conveyed .28 acres to Kenneth and Shelfie Hughes, but retained the oil, gas, and mineral rights. Emogene and Hayden Stapleton then conveyed a 50.14 acre tract to Carl and Lillian Ruggles, excepting therefrom the prior conveyance of 1.21 acres to John and Mattie Stapleton, the prior conveyance of .28 acres to the Hugheses, and also excepting a specifically described .25 acre tract from the conveyance. The Stapletons also excepted "all the minerals and oil and gas underlying said premises." The tract they conveyed to the Ruggleses included the original dwelling that was receiving free gas under the lease. Finally, John and Mattie Stapleton reconveyed the 1.21 acre tract to Hayden and Emogene Stapleton, established a home in the dwelling thereon and continued to use the free gas which was extended from the dwelling sold to the Ruggleses, who also continued to use the free gas.
 {¶ 26} Years later, a dispute arose as to who was entitled to the free gas. Columbia Gas elected to allow the Ruggleses and not the Stapletons free gas privileges.
 {¶ 27} The Stapletons filed a declaratory judgment action seeking a declaration that they were entitled to free gas under the lease, an injunction against the Ruggleses prohibiting their use of the free gas, and monetary damages from Columbia Gas. The trial court granted summary judgment in favor of all defendants *Page 6 
and the Stapletons appealed.
 {¶ 28} On appeal, the court stated that it had to first determine the intent of the parties to the original lease with regard to the free gas provision. The court found that by the use of the language "in the mansion house," the parties intended that only one house was to receive free gas. Id. at 18. The court next examined whether the parties intended the right of free gas to run with the surface land. The court found an important factor was that the lease provided that its terms and conditions extended to the contracting parties' heirs, successors, personal representatives, and assigns. Id. at 19.
 {¶ 29} The court concluded that the free gas provision was a real covenant that ran with the surface ownership of the leasehold tract, and had the Stapletons conveyed the whole tract, the right to free gas would have run with the land and passed to the grantee. Id. However, the Stapletons conveyed less than the whole leasehold tract.
 {¶ 30} The Stapletons argued that the right to receive free gas does not pass under a deed conveying the part of the surface tract upon which the house receiving free gas is located as long as any portion of the surface of the leasehold estate is retained by the grantor. Furthermore, the Stapletons argued that Emogene Stapleton had the right, since no specific mansion house was described, to transfer the free gas benefit to any portion of the tract to which she relocated her mansion house. The court did not accept this argument.
 {¶ 31} The court found that no such intention was manifested prior to or at the time of the conveyance to the Ruggleses. Id. at 19. It stated that in order to achieve the result advanced by the Stapletons, it would have been necessary to have specifically withheld the non-apportionable free gas right from the conveyance to the Ruggleses. Id. The court held that absent such a provision, it was inferable that the right to free gas entered into and increased the price paid by the Ruggleses to the Stapletons for the tract conveyed. Id.
 {¶ 32} The Stapletons additionally argued that the exception of the oil, gas, *Page 7 
and mineral rights in the Ruggleses' deed also excepted the right to free gas. However, the court disagreed. It noted that the free gas covenant ran with ownership of the surface and not the gas, oil, and mineral estate. Id. at 20. Therefore, the court concluded, "since the right to free gas was not excepted from the deed to the Ruggleses, and since the deed conveyed the house receiving free gas, we hold that the right to free gas passed under the deed provisions conveying `all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof.'" Id.
 {¶ 33} This court applied Stapleton in Sethi, 126 Ohio App.3d 382, where the issue was: Which party is entitled to free gas under a free gas provision of an oil and gas lease when that benefit runs with the land subject to the lease and the land is subsequently subdivided into several parcels? One of the deeds in Sethi contained an express grant of the right to free gas. We noted that in Stapleton, none of the deeds contained an express grant of the right to free gas but that one deed conveyed the tract of land that included the dwelling receiving free gas under the oil and gas lease. Id. at 387-88. We then pointed out:
 {¶ 34} "Thus, the court in Stapleton concluded that the right to free gas remained with the dwelling originally receiving the free gas, even though the dwelling was now owned by a party other than the original owner/lessor. Stapleton further provides that the terms and grants of a deed to a portion of leased land can effectively transfer the right to free gas. The Stapleton court did not bother to identify which parcel included the well in question and, therefore, clearly considered the location of the well to be irrelevant to its decision. The court inStapleton also supported its determination that the right to free gas runs with the surface land, which includes the original dwelling receiving the free gas, by noting that the surface owner of the dwelling entitled to free gas is presumptively the one intended to be benefited." Id. at 388.
 {¶ 35} The Pritchards argue that Stapleton is distinguishable for several reasons. First, they point out that the lease in Stapleton applied to "the mansion *Page 8 
house" and the lease here references "one dwelling." Next, they point out that the lease here, unlike the lease in Stapleton, provides that if the original lessor no longer owns the property with the dwelling house, then a new lease must be executed between the lessee and the new owner in order for the free gas provision to continue. Additionally, the Pritchards contend that the lease also provides that if the leasehold is subdivided, then the land with the well is to retain the free gas as opposed to the land with the dwelling house.
 {¶ 36} Like Stapleton, here the lease limits the free gas to use in "one dwelling house." (Lease at ¶ 7). In Stapleton, the lease referred to "the mansion house" instead of "one dwelling house." However, the court noted that this was insignificant because at common law "mansion house" was used interchangeably with "dwelling house." Stapleton, 2 Ohio App.3d at fn. 4. Additionally, as in Stapleton, the lease here provides that its covenants and conditions extend to the contracting parties' heirs, personal representatives, successors, and assigns. (Lease at paragraph 19). Consequently, Stapleton is not distinguishable on these grounds.
 {¶ 37} Additionally, Stapleton held:
 {¶ 38} "The right to receive free gas in a lease will be ordinarily considered personal to the lessors when the lease specifies the persons who are to receive the free gas and the lease is silent with respect to extending the terms and conditions of the lease to the contracting parties, heirs and assigns." Stapleton, 2 Ohio App.3d at paragraph three of the syllabus.
 {¶ 39} Thus, in this case the right to free gas would be considered personal to the Welshes if the lease was silent with respect to extending its terms. However, the lease is not silent in this respect. The lease specifically provides, "[a]ll covenants and conditions between the parties hereto shall extend to their heirs, personal representatives, successors and assigns." (Lease at paragraph 19). And in the provision expressly dealing with the free gas, the lease provides that the lessor agrees to hold the lessee harmless from any claims arising from the use of the free gas by the lessor's "heirs, executors, administrators and assigns." (Lease at *Page 9 
paragraph 7). These provisions demonstrate that the parties to the original lease contemplated that the lease terms would extend beyond the Welshes' ownership of the property. Therefore, pursuant to the lease, the right to free gas was not personal, but instead ran with the land. See also Atlas Energy Group, Inc. v. Brainard (Feb. 1, 1991), 11th Dist. No. 89-T-4271.
 {¶ 40} Additionally, Stapleton held:
 {¶ 41} "Where an oil and gas lease provides that the lessor shall receive free gas `in the mansion house,' and the lessor conveys his interest in the part of the surface tract upon which the house (the mansion house) receiving free gas is located, but retains a portion of the surface leasehold tract, the new owner of the tract upon which the mansion house is located has the right to receive the free gas unless the right to receive free gas was excepted from the deed to the new owner." Stapleton, 2 Ohio App.3d at paragraph four of the syllabus.
 {¶ 42} Pursuant to this holding, the Jacobses are entitled to the free gas. They now own the tract upon which the dwelling house previously receiving the free gas is located. Furthermore, the right to receive free gas was not excepted from the deed from Harry Welsh's estate to the Jacobses. (Response of Zimmerman and David Welsh to request for admissions, interrogatories, and request for production of documents, Ex. G).
 {¶ 43} As the Pritchards point out, the lease requires:
 {¶ 44} "Lessor further agrees that upon the sale or transfer of the leasehold premises wherein someone other than the Lessor is entitled to take the gas under this Paragraph 7, that the gas supply will be terminated by the Lessee until the Buyer of the property executes an agreement regarding the usage of the gas in the same form as the within agreement. In the absence of such an agreement, free gas under this provision, shall terminate the within right to free gas not being assignable without the consent of the Lessee." (Lease at paragraph 7).
 {¶ 45} This provision, however, does not support the Pritchards' position. The provision can be construed in one of two ways. If the Jacobses are construed as the *Page 10 
"Lessor" under the lease, then another agreement would only have to be executed if the Jacobses assigned the right to free gas to another party. If on the other hand, the Jacobses are construed as the "Buyer of the property" under the lease, then the Jacobses would simply have to execute an agreement with Kimble regarding usage of the free gas. Either way the language is construed, the Pritchards are not entitled to free gas to the exclusion of the Jacobses.
 {¶ 46} The Pritchards also point to paragraph 11 of the lease. It deals with what is to happen should the lessee wish to consolidate the leased premises with other land to form an oil and gas development. It provides in part:
 {¶ 47} "The Lessor hereby grants to the Lessee the right at any time to consolidate the leased premises * * * to form an oil and gas development unit * * * Any well drilled on said development unit, whether or not located on the leased premises, shall nevertheless be deemed to be located upon the leased premises within the meaning and for the provisions and covenants of this lease to the same effect as if all the lands comprising said unit were described in and subject to this lease; provided, however, that only the owner of the lands on which suchwell is located may take gas for use in one dwelling house on such owner's lands in accordance with the provisions of this lease * * *." (Emphasis added.)
 {¶ 48} The Pritchards argue that the emphasized language confirms their entitlement to free gas, to the exclusion of the Jacobses. They argue that the intent could not have been that the owner of the property on which the well is located be deprived of the right to free gas for a dwelling on that same land.
 {¶ 49} The problem with this argument is that paragraph 11 deals specifically with what is to occur should Kimble wish to consolidate the leased property with other property to form a larger oil and gas development unit. There has been no consolidation. Thus, paragraph 11 is inapplicable to the matter at hand.
 {¶ 50} The Pritchards also argue that the lease does not create a covenant running with the land because without the right to free gas, they are left with the burden of the well without a corresponding benefit. This is untrue. When the *Page 11 
Pritchards took title to the approximately 150 acres, they became the lessor for purposes of that tract of land. Therefore, they became entitled to the gas royalties under the lease for their tract of land. In fact, the Pritchards have been collecting the gas royalties under the lease for their tract since 2001. (Kimble Aff. ¶ 3-4). Thus, the Pritchards do have a benefit from the well.
 {¶ 51} The Pritchards further argue that if the Jacobses are entitled to free gas then, pursuant to the lease, the Pritchards will have to hold the lessee (Kimble) harmless for the portion of the gas line that extends over the Jacobses' property and over which they have no control. However, this also is untrue. The lease provides that, "Lessor agrees to assume all such risks whether same be caused by Lessor's lines or equipment, or whether same be caused by Lessee's equipment or well operation; and to hold Lessee and the well operator and all parties in interest in any well on the leasehold premises harmless from any claims of any nature whatsoever which may arise by the usage of gas from any such well by Lessor, his heirs, executors, administrators and assigns." (Lease at ¶ 7). Thus, pursuant to the lease, since the Jacobses are entitled to use the free gas then they are also responsible for indemnifying both Kimble and the Pritchards for any claims arising out of their usage of the gas.
 {¶ 52} Additionally, another case is worth discussing. At oral argument, counsel for the Pritchards relied on the case of Alicea v.Welch, 5th Dist. No. 2003 AP 08 0064, 2004-Ohio-3854. InAlicea, the Welches owned a parcel of property on which a gas well was located. The Welches received free gas from the well. Alicea owned the adjacent parcel of property. Prior to Alicea owning his parcel of property, it was owned by Lawrence. Lawrence asked the Welches if he could connect into their gas line. The Welches agreed, on the condition that Lawrence would pay for his gas usage exceeding a certain amount and as long as the lessee did not object. This agreement continued between Lawrence and the Welches until Lawrence's death. When Alicea became the owner of the Lawrence property, he asked the Welches if he too could use the free gas under the same conditions that Lawrence *Page 12 
had used it. The Welches agreed. This agreement worked for over two years. However, at that time, Alicea received a bill from the lessee for the amount of gas that he had used over the agreed upon amount. Alicea refused to pay it. The lessee then threatened to cut off the free gas to the Welches. Consequently, the Welches severed the gas line from Alicea's property leading to the well on their property. Alicea then filed a complaint against the Welches. After a bench trial, the trial court dismissed Alicea's complaint with prejudice. Alicea appealed.
 {¶ 53} The lease at issue contained a provision, similar to that at issue in the case sub judice, that stated: "Lessor further agrees that only the owner of the lands on which the development unit well is located may take gas for use in one dwelling house as hereinbefore provided." Id. at ¶ 5. Additionally, there was a consolidation with the lease at issue whereby it was consolidated with other leases to form an oil and gas development unit. The notice of consolidation provided in part: "Under the terms and conditions of each of the above leases as herein consolidated, the lands covered hereby shall be considered as a single tract of land for the purpose of drilling, and a well commenced upon the lands herein consolidated shall have the same effect as though such well were commenced upon the premises described in each such oil and gas lease, provided that only the owners of the lands on which saidwell is located shall have the privilege of taking gas for use in onedwelling house on said lands in accordance with and subject to theprovisions of the lease covering said land." (Emphasis added.) Id. at ¶ 8.
 {¶ 54} The lease also contained other provisions similar to those at issue in the present case stating that the lessor could lay a gas line to provide gas to one dwelling house and that upon consolidation, the lessor agreed that only the owner of lands on which the development unit was located could take gas for use in one dwelling house. Id. at ¶ 4-5.
 {¶ 55} The court of appeals found that pursuant to these terms, because the well was located on the Welches' property, only the Welches were entitled to free gas. Id. at ¶ 45. It found that there was no document that granted Alicea the right to *Page 13 
free gas from any well. Id.
 {¶ 56} The present case is distinguishable from Alicea. In that case, two separate gas leases were executed — first one by the Welches and then another by Lawrence. Lawrence's lease provided that he could lay a gas line to any well "on said premises" and take gas from said well for use in one dwelling house. At the time Lawrence entered into his gas lease, the lessee agreed to promptly connect a gas line at the well on Lawrence's property. However, the well was never placed on Lawrence's property. Thus, at the time of entering into the agreement, the parties contemplated that the lessee would place a gas well on Lawrence's property.
 {¶ 57} In the case sub judice, however, only one gas lease was ever executed. And at the time of the execution of the lease, the entire parcel of property was owned by the same person, Welsh. Welsh subsequently divided his property, selling the part with the well to the Pritchards and, ultimately, passing the part with the dwelling house receiving free gas to the Jacobses. Thus, the parties in this case never contemplated that another gas well would be placed on the section of the property that was conveyed to the Jacobses. In Alicea, however, two gas leases existed, two owners were involved, and it appears that initially two dwelling houses were contemplated to receive free gas — one on each separately leased parcel of property. Thus, this case is distinguishable. Additionally, in this case the lease provides the right to free gas is to pass to the Welshes' successors and assigns, which includes the Jacobses. Hence, in this case there is a document that gives the Jacobses the right to free gas. Furthermore, there has been no consolidation in this case. Thus, the terms of the consolidation provision have not come into effect here. And no consolidation notice is present as was the case in Alicea.
 {¶ 58} Based on all of the foregoing grounds, the trial court properly overruled the Pritchards' summary judgment motion and properly granted summary judgment to the Jacobses. Accordingly, both of the Pritchards' assignments of error are without merit.
 {¶ 59} For the reasons stated above, the trial court's judgment is hereby *Page 14 
affirmed.
Vukovich, J., concurs.
DeGenaro, P.J., concurs.
[1] Floyd Kimble has since passed away. Doris Kimble is the executrix of his estate and is now the party to this case. *Page 1